# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2025

Lyle W. Cayce
Clerk

No. 25-10356

CHARLES FAULK,

*Plaintiff—Appellant*,

*versus*

OWENS CORNING ROOFING AND ASPHALT, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:23-CV-230

Before SMITH, STEWART, and HAYNES, *Circuit Judges*.

PER CURIAM:[*]

This case involves Appellant Charles Faulk's race-based claims of Title VII employment discrimination and retaliation against his former employer, Owens Corning Roofing and Asphalt ("Owens Corning"). Faulk alleges that while he was an employee at Owens Corning, his night-shift supervisor Michael Brown revoked his ability to take overtime shifts for one of his job classifications, and that Brown's discriminatory animus ultimately

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

led to his termination. On appeal, Faulk argues that the district court erred in analyzing his claims by improperly applying a strict comparator requirement, improperly weighing the evidence, and making credibility determinations that should have been left to a jury. For the following reasons, the judgment of the district court is AFFIRMED.

# I

## A

Owens Corning is a "market leader in roofing shingles, underlayment, and components products" with an Irving, Texas plant at which employees "manufacture and package quality roofing materials." In 2016, Owens Corning hired Faulk as a utility operator. In 2017, Faulk was promoted to the position of raw material coordinator driver, and in 2019, he was trained to be an end-of-line driver. Faulk primarily worked the night shift and would often take overtime shifts.

When Faulk worked the night shift, Brown was his supervisor. According to Faulk, Brown treated Black employees differently from White employees. Additionally, on December 3, 2019, Brown posted or reposted on his personal Facebook account a post about a Super Bowl squares competition. In the back of one of those photos, hanging in the wall of the garage behind the Mustang that was the subject of the picture, was a Texas state flag and a Confederate flag. At some point during his employment, Faulk and another employee discovered the photo.

### 1

In February 2022, Faulk raised a complaint to human resources ("HR") officer Rebecca Pike, claiming that Brown turned off his ability to take overtime shifts in the Owens Corning system. Faulk told Pike, and later testified during his deposition, that he believed Brown revoked his access to

overtime shifts because he was jealous of Faulk's new truck. An investigation into Faulk's report revealed that Brown did deactivate Faulk in the system because he "believed that [Faulk] was not qualified for a certain role." Pike testified that Brown deactivated Faulk's access without authorization and that Faulk was subsequently reinstated into the system. That was the first time Pike had heard of Brown's deactivating an employee's overtime.

**2**

While Faulk was employed, Owens Corning had a policy prohibiting substance use, including THC (the psychoactive component of marijuana), in the workplace. As of August 2021, employees were no longer subject to random tests for THC use. However, employees were still subject to testing based on reasonable suspicion and "[p]ost incident testing . . . after an employee's second safety related incident within a twenty-four-month period (regardless of property damage or injury, including near-misses)." On June 10 and 12, 2022, Faulk had two incidents that qualified as safety-related incidents or "near misses." Hannah Schyllander, another shift supervisor, reported the incidents to Owens Corning's environmental health and safety representative Kennedy Reister. After learning that Faulk had two incidents in such close succession, Reister instructed that Owens Corning drug test Faulk in accordance with company policy. Faulk tested positive for marijuana.

After Faulk's positive drug test, on June 21, 2022, Faulk signed a continued employment agreement. The agreement stated that Faulk had tested positive for drugs in violation of the company's policy and outlined the terms and conditions of Faulk's continued employment. One of those conditions was that Faulk "must comply with all company policies and maintain satisfactory performance in all job-related activities." He acknowledged that "[f]ailure to comply with any of the [terms] mean[t]

No. 25-10356

automatic release from [his] employment with Owens Corning and [would] constitute just cause for termination."

Less than one month later, on July 14, 2022, Owens Corning received two different communications indicating that Faulk was wearing Airpods while operating his forklift. The use of Airpods and other Bluetooth devices was expressly prohibited by Owens Corning's safety policy, which required use of authorized hearing protection devices and prohibited Bluetooth headphones. Faulk was terminated on July 18, 2022.

According to Brown, he neither made the decision to terminate Brown nor was consulted during his termination. After Faulk's termination, another employee texted Brown to ask whether Brown "w[o]n [his] fight" with Faulk. Brown replied, "He has been terminated." The other employee responded with a GIF[1] and the words "WHITE POWER." Brown responded, "No sir I'm not a racist." The employee responded "I'm kidding. Calm down."

In October 2022, Faulk filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC").

**B**

On January 30, 2023, Faulk filed a complaint against Owens Corning in the Northern District of Texas, alleging Title VII claims of discrimination and retaliation based on race. Owens Corning filed a motion for summary judgment, arguing that Faulk did not establish a prima facie case of

---

[1] GIF stands for "graphics interchange format." A GIF is a series of photos or a short video that plays continuously on a loop.

4

discrimination. Faulk opposed the motion, referring the district court to his 1,042-page appendix.[2]

The district court held a hearing on the motion for summary judgment, seeking to understand the adverse actions and comparators that Faulk alleged. The district court subsequently granted summary judgment to Owens Corning, determining that Faulk failed to establish a prima facie case of discrimination or retaliation. In its ruling, the district court pointed out that it sorted through the thousands of pages of evidence presented to it, despite Faulk's failure to point it to the relevant facts in the record. Faulk timely appealed.

## II

Because Faulk's claims arise under federal law, the district court had jurisdiction to hear the case pursuant to 28 U.S.C. § 1331. This court has appellate jurisdiction to review the district court's final judgment pursuant to 28 U.S.C. § 1291.

We review a district court's ruling on a motion for summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020) (citing *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016)). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). A genuine dispute of material fact exists if the dispute "might affect the outcome of the suit" and

---

[2] That appendix was unnumbered. The district court noted that it could strike the appendix but "ch[ose] not to do so." Additionally, in his appellate brief, Faulk argues that the district court took the "unusual step" of having two of his witnesses sit for depositions after the initial summary judgment briefing was complete. However, the district court ordered depositions (rather than striking the declarations altogether) because Faulk failed to disclose those witnesses during discovery.

"a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.'" *Id.* at 247–48.

## III

### A

We first consider Faulk's Title VII discrimination claims based on the revocation of his overtime access and his termination. Claims of employment discrimination under Title VII are subject to the burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ("*McDonnell Douglas*"). Under that framework, the plaintiff must first establish a prima facie case of discrimination by proving four elements:

> (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances.

*Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009).

Once the plaintiff has established a prima facie case, there is an "inference of intentional discrimination . . . and the burden of production shifts to the employer, who must offer an alternative non-discriminatory explanation for the adverse employment action." *Id.* (footnote omitted); *Ames v. Ohio Dep't of Youth Servs.*, 605 U.S. 303, 308–09 (2025). If the employer asserts a "legitimate" reason for its decision, then the burden shifts back to the plaintiff "to show that the stated justification 'was in fact pretext' for discrimination." *Ames*, 605 U.S. at 309 (quoting *McDonnell Douglas*, 411

U.S. at 804). Thus, "[a] plaintiff 'may succeed [under the *McDonnell Douglas* framework] either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* (second alteration in original) (quoting *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 256 (1981)).

The fourth element of the prima facie case is the primary focus of this dispute. This circuit has previously considered how to identify similarly situated employees when the plaintiff alleges they were disciplined differently because of their membership in a protected class. In those cases, we have explained that the employees' situations must be "*nearly* identical." *Lee*, 574 F.3d at 260 (emphasis added). Nearly identical circumstances exist where the employees: (a) "held the same job or responsibilities," (b) "shared the same supervisor or had their employment status determined by the same person," and (c) "have essentially comparable violation histories." *Id.* However, an employee is not similarly situated if the "difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer." *Id.* (quoting *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001)).

**B**

Faulk raises two Title VII claims of discrimination. He argues that he was discriminated against based on race when (1) Brown revoked his ability to access overtime shifts; and (2) he was terminated.

**1**

The district court did not err in rejecting Faulk's discrimination claim regarding the revocation of his overtime access. Faulk himself claims that his access to overtime was revoked for a reason other than his race.  Both in his declaration and during his deposition, Faulk explained that the reason Brown

revoked his option to take overtime was because he was jealous of Faulk's new truck: "[O]nce I showed up with the new rims and tires on the truck, it was basically him saying, 'He's getting too much overtime over here.' That's how I took it. That's why [my overtime] was turned off." According to Owens Cornings's Rule 30(b)(6) deposition by Pike, Faulk did not report the overtime issue as discrimination. Pike explained that Faulk "felt that . . . Brown was kind of copying him and had the same type of vehicle, [and] was causing problems for him."

Faulk did not present to the district court, and has not presented to this court, any evidence that he believed the revocation of his overtime access was due to his race. Pike did testify that Brown's revocation of overtime access was unauthorized. However, "[p]oor treatment without more is not sufficient to show harassment based on race, even if [the plaintiff] believes race to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 356 (5th Cir. 2017) (per curiam) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). Because Faulk's overtime access was not revoked based on his race, we hold that his corresponding discrimination claim is without merit. *See McDonnell Douglas*, 411 U.S. at 796 n.4, 802.

**2**

We next consider Faulk's discrimination claim regarding his termination. He argues that "[c]omparator evidence is not the only way to meet the fourth [element]" of the prima facie case because the *McDonnell Douglas* framework is "not rigid." Despite that statement, most of Faulk's arguments that his termination was discriminatory focus on two purported comparators: Zach Probst and Ivan Villegas. But Faulk's appellate briefing does not provide any facts to show that either employee was in fact similarly situated. As the district court explained when granting Owens Cornings's

motion for summary judgment, "[j]udges are not like pigs, hunting for truffles buried in the record." *See United States v. del Carpio Frescas*, 932 F.3d 324, 331 (5th Cir. 2019) (per curiam). Nonetheless, the district court searched the record below for comparator evidence and determined that there was insufficient evidence to establish any similarly situated comparator. We did the same and draw the same conclusion: There is insufficient evidence to establish a similarly situated comparator.

As articulated *supra*, a similarly situated comparator in this context should share the same "job or responsibilities," the same supervisor, and should have an "essentially comparable violation history[y]." *Lee*, 574 F.3d at 260. There is no evidence to show that neither Probst nor Villegas is a similarly situated comparator. Probst was a White Owens Corning employee, but Faulk does not explain or offer evidence of Probst's job title, job responsibilities, or supervisor, and he does not have an essentially comparable violation history. Villegas was a Hispanic Owens Corning employee who Faulk states is a "supervisor" and whose boss is his father. However, Faulk does not explain or offer evidence of Villegas's job responsibilities, and Villegas does not have an essentially comparable violation history. Additionally, the fact that Villegas's father is his boss suggests that he and Faulk did not share the same supervisor.

In sum, Faulk has not offered sufficient evidence to establish a similarly situated comparator and does not establish the fourth element of his prima facie case. Moreover, the record reflects that Faulk was replaced by an employee in his protected class.

Faulk argues that despite the lack of comparators, and despite the fact that he was replaced by an employee in his protected class, he can satisfy the

fourth element with other evidence of discrimination.[3] We need not address that argument because even if Faulk could establish a prima facie case, Owens Corning has offered a legitimate reason for Faulk's termination: his failed drug test and subsequent violation of his continued employment agreement. Faulk cannot show that proffered reason is pretextual for two primary reasons.

First, Faulk admitted to each of the violations that led to his termination. During his deposition, Faulk testified that he used marijuana during his employment with Owens Corning. He acknowledged that when Owens Corning drug tested him, he tested positive for marijuana. It did not surprise him that he tested positive given his levels of consumption of marijuana at that time. He acknowledged that Owens Corning could have terminated him due to his drug use but instead offered him a last chance agreement. Also, during his deposition, Faulk acknowledged that the last chance agreement required him to follow all company policies. He then admitted that he wore Airpods while working at the plant, which was yet another violation of company policy. He was then terminated from Owens Corning. Thus, Faulk admitted to his violations of Owens Corning's policies

---

[3] The district court identified the evidence Faulk attempted to marshal to argue that the fourth element was met even without a similarly situated comparator: declarations from other employees about Brown's treatment, the photo included in a repost on Brown's Facebook page that included a Confederate flag in the background, and the text message sent to Brown that read "WHITE POWER." The record does contain facts that suggest that Brown did not like Faulk—and the text sent *to* Brown is alarming to say the least. However, these facts are not enough to satisfy the fourth element of Faulk's prima facie case. Even if Brown did not like Faulk, again, "[p]oor treatment without more is not sufficient to show harassment based on race, even if [the plaintiff] believes race to be the motivating factor for the poor treatment." *Eaton-Stephens v. Grapevine Colleyville Indep. Sch. Dist.*, 715 F. App'x 351, 356 (5th Cir. 2017) (per curiam); *see Waggoner v. City of Garland*, 987 F.2d 1160, 1166 (5th Cir. 1993) (explaining that a supervisor's dislike of an employee is not relevant to the employee's discrimination claim if there is no evidence that "connect[s]" that dislike to the employee's protected class).

that led to his termination. Even taking Faulk's testimony as true, and declining to engage in credibility determinations, he cannot overcome Owens Corning's legitimate reason for his termination.

Second, Faulk has offered no evidence that Brown was involved in his termination and thus caused the adverse action to occur. Record evidence shows that after Faulk's two June 2022 safety incidents occurred, Owens Corning's environmental health and safety representative made the decision to have Faulk drug tested in accordance with the company policy. It was because of Faulk's resulting positive drug test that he was subject to a continued employment agreement. Further, when Faulk used Airpods rather than approved protective hearing gear, it was not Brown who reported the safety violation. Owens Corning received two separate complaints from other employees that Faulk was wearing "white earpods" while driving. And at oral argument, Faulk's counsel acknowledged that the decision to ultimately terminate Faulk was made by Pike or others in HR who had the power to engage in decision making at that level. This lack of evidence connecting Brown to Faulk's termination further supports that Faulk cannot overcome Owens Corning's legitimate reason for his termination.

Therefore, Faulk's claims of discrimination regarding the temporary revocation of his overtime access and termination both fail, and the district court did not err in granting summary judgment to Owens Corning on those claims. *See McDonnell Douglas*, 411 U.S. at 804–05.

## III

### A

We next consider Faulk's Title VII claims of retaliation based on the revocation of his overtime access and his communications with the EEOC. "To establish a prima facie case of retaliation, [a plaintiff] must show that: (1) [he] participated in an activity protected by Title VII; (2) [his] employer

took an adverse employment action against [him]; and (3) a causal connection exists between the protected activity and the materially adverse action." *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008) (citation modified). As with discrimination claims, once the plaintiff establishes a prima facie case, "the burden then shifts to the employer to articulate a legitimate . . . non-retaliatory reason for its employment action." *Id.* (citation omitted). The first and third elements of the prima facie case are at issue here.

"Protected activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII." *Lewis v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 134 F.4th 286, 295 (5th Cir. 2025) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). For example, "[t]he filing of an EEOC charge constitutes protected activity." *Id.* (citing *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 439 (5th Cir. 2005)). However, the protected activity "must relate to discriminatory practices based on race, color, religion, sex, or national origin" to be entitled to protection under Title VII. *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 327 (5th Cir. 2017) (per curiam) (citation omitted).

To prove a causal connection between the activity and the materially adverse action, the evidence must demonstrate that "the employer's decision to terminate was based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) (quoting *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998)); *see also Tureaud v. Grambling State Univ.*, 294 F. App'x 909, 914 (5th Cir. 2008) (per curiam) ("To establish a 'causal link' [between] the protected activity and the adverse employment decision, the evidence must demonstrate that the decision maker had knowledge of the protected

activity.”). Thus, where an employer lacks knowledge of the employee's protected activity, no causal link exists.

**B**

Faulk points to two instances in which he argues he engaged in protected activity. First, he raised a complaint to HR about the revocation of his overtime, and "[w]ithin weeks, . . . . was drug tested, written up, and terminated for wearing AirPods." Second, he "went to the EEOC just a week before he was fired." Faulk argues that the temporal connection between these activities and his termination would be sufficient for a "reasonable jury [to] infer that his firing was retaliatory."

**1**

Faulk fails to establish a prima facie case of retaliation related to his internal complaint about the revocation of his overtime because he has not presented facts to show that he was engaged in protected activity. As explained *supra*, Faulk's own testimony is that Brown revoked his overtime access because he was jealous of Faulk's truck. As the district court correctly explained, "[h]arassment motivated by something other than a plaintiff's membership in a protected class lies beyond the scope of Title VII." *See Stingley v. Watson Quality Ford*, 836 F. App'x 286, 289 (5th Cir. 2020) (per curiam). Reports of general harassment that are not based on a protected class are not protected activity and are thus insufficient to support a claim of retaliation. Therefore, Faulk does not state a prima facie case of retaliation based on his internal complaint. *See Aryain*, 534 F.3d at 484; *Allen*, 721 F. App'x at 327.

**2**

Faulk also fails to establish a prima facie case of retaliation related to his communications with the EEOC or his charge of discrimination because

he has not presented facts to show a causal link between those communications and his termination. Faulk testified that he did not tell Brown, Pike, or any Owens Corning employee with supervisory authority over him about his meetings with the EEOC. Faulk testified that he only told a fellow employee who had alerted him to the resource. Therefore, there is no evidence to suggest that Owens Corning had knowledge that Faulk went to the EEOC at the time of his termination. *See Tureaud*, 294 F. App'x at 914 (explaining that to establish a causal link, "the evidence must demonstrate that the decision maker had knowledge of the protected activity"). Thus, Faulk fails to establish that Owens Corning was aware of his communications with the EEOC, let alone that the activity led to his termination. Accordingly, he has failed to establish a prima facie case of retaliation based on his communications with the EEOC. *See id.*; *Aryain*, 534 F.3d at 484.

## IV

In short, the district court did not engage in improper credibility determinations or weighing of the evidence presented. Even accepting all of Faulk's testimony as true, Faulk fails to meet his burden of establishing a prima facie case of discrimination or retaliation. For the foregoing reasons, the judgment of the district court is AFFIRMED.