# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-40495

_____

ROMEO SALINAS,

Plaintiff-Appellee,

VERSUS

PAUL O'NEILL,
SECRETARY, DEPARTMENT OF THE TREASURY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

April 9, 2002

Before SMITH and DEMOSS, CIRCUIT
JUDGES, and LAKE, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

The United States, through the Secretary of the Treasury, appeals the denial of a motion for remittitur following a jury award in the trial

of a retaliation claim by customs agent Romeo Salinas. We vacate and remand the award and order a remittitur unless Salinas elects a new trial on damages.

I.

Salinas has worked for the Customs Service since 1982, first in Louisiana, and now in Texas. By July 1996, he had risen to the rank of GS-12. In October 1996, in response to a vacancy announcement for GS-13 positions, Salinas and six others were placed on a selec-

* District Judge of the Southern District of Texas, sitting by designation.

tion register for those spots. Three of the applicants were promoted that month, and three more in May 1997; Salinas was the only one not promoted.

Salinas sued under title VII and the Age Discrimination in Employment Act ("ADEA"), alleging violations for failing to promote him because of his race and his age and in retaliation for previous filings with the Equal Employment Opportunity Commission ("EEOC").[1] He alleged discrimination in his non-selection for the vacant positions. Before suing, he had filed three complaints with the EEOC, two of which were resolved in his favor; the third was settled.

At trial, the court dismissed the ADEA claim. The jury found for the government on the race discrimination claim but for Salinas on the retaliation claim and awarded compensatory damages of $1 million, which the court reduced to $300,000 in accordance with the statutory cap in 42 U.S.C. § 1981a(b)(3)(D). The court denied the government's motion for remittitur and entered judgment for $300,000 in compensatory damages, $16,000 in medical expenses, backpay with interest, attorney's fees, and costs and retroactively promoted Salinas to the rank of GS-13.

## II.

The government appeals only the denial of remittitur, arguing there was insufficient evidence to support $300,000 for emotional and mental suffering. The government characterizes the evidence supporting the award as "perfunctory, non-specific, and uncorroborated." Specifically, Salinas and his wife testified to Salinas's loss of self esteem, feelings of not being a competent agent, loss of sleep, stress, paranoia, fear of future retaliation, and high blood pressure. The question we address is what amount and quality of evidence is necessary to support a jury award on appellate review.

Any award for emotional injury greater than nominal damages must be supported by evidence of the character and severity of the injury to the plaintiff's emotional well-being. *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir. 2001).[2] That a plaintiff may be entitled to something beyond nominal damages, however, is not to concede the reasonableness of just any award a jury may assign. That is precisely the situation in this case. The government concedes Salinas is entitled to some compensatory damages but does not agree he should receive $300,000.[3]

---

[1] 42 U.S.C. § 2000e-2; 29 U.S.C. § 621; 42 U.S.C. § 2000e-3(a).

[2] *See also Carey v. Piphus*, 435 U.S. 247, 264 n.20 (1978) (stating that "an award of damages must be supported by competent evidence"); *Brady v. Fort Bend County*, 145 F.3d 691, 719 (5th Cir. 1998) (noting the importance of detailed, non-conclusional statements).

[3] The award of $1 million is irrelevant to our final result; our review of the excessiveness of an award takes as its reference the capped amount, here $300,000. "When deciding whether a jury award is excessive, we consider the amount of the award after application of the statutory cap, not the amount given by the jury. *Giles*, 245 F.3d at 487 (citing *Vadie v. Miss. State Univ.*, 218 F.3d 365, 375-76 (5th Cir. 2000), *cert. denied*, 531 U.S. 1113, *and cert. denied*, 531 U.S. 1150 (2001)).

In other words, we treat the verdict as though the jury had awarded $300,000, and we ask whether that award is "clearly excessive." *Id.* at 488. (continued...)

We review denial of remittitur for abuse of discretion. *Eiland v. Westinghouse Elec. Corp.*, 58 F.3d 176, 183 (5th Cir. 1995); *Esposito v. Davis*, 47 F.3d 164, 167 (5th Cir. 1995). We set aside a decision to deny remittitur only when "left with the perception that the verdict is clearly excessive." *Eiland*, 58 F.3d at 183.

A mainstay of the excessiveness determination is comparison to awards for similar injuries. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 589 (5th Cir. 1985). This use of comparison is a recognition that the evaluation of emotional damages is not readily susceptible to "rational analysis." *Eiland*, 58 F.3d at 183. We tread with caution on an award made by a jury and upheld by a district court.[4] This caution manifests in the so-called "maximum recovery rule," by which we remit damage awards that we find excessive to the maximum amount the jury could have awarded.[5] *Id.*

In practice, our evaluation of what a jury could have awarded is tied to awards in cases with similar injuries. This comparison is limited to cases in the "relevant jurisdiction." *Douglass v. Delta Airlines, Inc.*, 897 F.2d 1336, 1339 (5th Cir. 1990). The "relevant jurisdiction" for federal discrimination law can only mean cases decided by this court.

In a further exercise of caution, to avoid substituting our opinion for that of the jury, we often have applied a multiplier, or percentage enhancement, to past similar awards.[6] We

---

[3](...continued)
As a result of the legislative imposition of a cap, disparate jury awards are treated the same: Any award of $300,000 or more is dealt with as though the jury had, in fact, given only $300,000, and we give no deference to the fact that the jury decided on more.

[4] *See Calderera v. E. Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir. 1983) (listing numerous formulations of our great deference to such awards).

[5] The government points out that *Giles* was the first case in which we used the maximum recovery rule in a discrimination case. The government argues this rule is inconsistent with the "make-whole" goal of that body of law, and thus we should reconsider the applicability of the rule in

(continued...)

---

[5](...continued)
this context. We disagree.

First, there is nothing magical about the percentage enhancement. Whether the maximum recovery rule is applied by calculating the most a jury could have awarded without requiring a new trial or by fixing the amount the appeals court thinks reasonable and then tacking on a percentage bonus to avoid supplanting the judgment of the jury, the effect is the same. In neither case is the court awarding more than the jury thought proper to make the plaintiff whole. The maximum recovery rule merely strives to prevent appellate courts from replacing what a jury thought would make a plaintiff whole (after imposing the statutory cap, *see supra* note 3) with what the court thinks would do so.

[6] *Giles*, 245 F.3d at 489 (50% multiplier); *Dixon*, 754 F.2d at 590 (same); *Calderera*, 705 F.2d at 784 (same). *But see Lebron v. United States*, 279 F.3d 321 (5th Cir. 2002) (applying 33% enhancement); *Marcel v. Placid Oil*, 11 F.3d 563 (5th Cir. 1994) (same); *Douglass v. Delta Airlines, Inc.*, 897 F.2d 1336 (5th Cir. 1990) (same); *Haley v. Pan Am. World Airways, Inc.*, 746 F.2d 311 (5th Cir. 1984) (same). Although all of the cases using a 50% enhancement involved jury trials, those applying a 33% multiplier are split.

(continued...)

would not, however, apply a multiplier where such a calculation was a part of the award. Such a calculation could lead to explosive growth in damage awards resulting merely from the happenstance of there being several factually similar cases with similar damages decided in close temporal proximity.

## III.

The government asserts that evidence of the quantum and quality of the evidence that was presented here has never been deemed to justify an award as high as $300,000. Three of our decisions inform our evaluation of the award made to Salinas.

In *Forsyth v. City of Dallas, Tex.*, 91 F.3d 769 (5th Cir. 1996), we upheld an award of $100,000 under 42 U.S.C. § 1983 where an officer was transferred in violation of her First Amendment rights. This award was premised solely on plaintiff's testimony pointing to her "depression, weight loss, intestinal troubles, and marital problems." *Id*. at 774. She also testified that she had consulted a psychologist. *Id*.

We considered a sex discrimination claim stemming from discharge in *Williams v. Trader Publ'g Co.*, 218 F.3d 481 (5th Cir. 2000), in which plaintiff was awarded $100,000 in compensatory damages for emotional distress,

---

[6](...continued)
*Lebron* and *Douglass* were bench trials, while *Marcel* and *Haley* were jury trials.

Faced with this impasse between competing multipliers, we choose the 50% figure. The apparent origins of the two multipliers are *Calderera* and *Haley*. *Calderera* predates *Haley* and thus controls under our circuit's rule of orderliness. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999).

premised solely on her testimony regarding her "severe emotional distress," "sleep loss," "severe loss of weight," and "beginning smoking." *Id*. We upheld the award, noting that even the lone testimony of the plaintiff may support an award of emotional damages. *Id*.

Most recently, we had occasion to consider the sufficiency of evidence supporting an emotional damage award and the maximum recovery rule in *Giles*, an ADA case. Plaintiff and a co-worker testified to plaintiff's sleeping trouble, headaches, marital difficulties, and loss of prestige and social connections. *Id*. at 488. The co-worker testified that plaintiff "appeared despondent, depressed, down, and absolutely utterly discouraged about not being able to come back to work." *Id*. The jury had awarded $300,000 based on this testimony. Drawing on *Forsyth*, we concluded the injury was not of the type that could sustain a $300,000 award. *Id*. Following the maximum recovery rule, we set the amount the jury *could have* awarded at $100,000; we then multiplied by 150% out of deference to the jury. *Id*.[7]

---

[7] One panel of this court may have awarded more than $100,000 for emotional injury stemming from illegal discrimination. In *Polanco v. City of Austin, Tex.*, 78 F.3d 968 (5th Cir. 1996), the plaintiff initially was awarded $150,000 for emotional injury. The district court remitted the compensatory award of $350,000 to $290,000. As a matter of percentage, this would mean the $150,000 was reduced to $124,285.

We decline to use this award as a basis for deciding what a jury "could award." Not only is the basis of the district court's remittitur unknown, but the panel did not discuss the propriety of the emotional injury component of the total award. Furthermore, the 150% rule we use here helps

(continued...)

4

Salinas and his wife have presented at least as much evidence as did the plaintiffs in these three cases. Salinas testified as to his high level of paranoia regarding further retaliation from his superiors at customs. He also testified to using "lots" of sick leave and visiting physicians more than seventy times and spoke of his deteriorating relations with his wife and son.

Salinas's wife corroborated all of these specifics.[8] We also note that he was awarded $16,000 in medical expenses, a finding the government does not challenge. Thus, although Salinas did not document his medical expenses, the jury was persuaded he had incurred them. This unchallenged award supports the plausibility of Salinas's damage award in a manner not present in the four cases upholding awards of $100,000.

We are careful when upholding emotional damage awards supported only by testimony of the plaintiff and a spouse, but we keep in mind our tradition of appellate review that commands strong deference to the jury and to the district judge who observed the testimony. "In certain cases a plaintiff's testimony alone may be sufficient proof of mental damages." *Giles*, 245 F.3d at 488 (internal quotations and citations omitted). We also are mindful that "[h]urt feelings, anger and frustration are part of life . . . and [are] not the types of harm that could support a mental anguish award. Damages for emotional distress may be appropriate, however, where the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation." *Id.* (internal quotations and citation omitted).

No bright-line rule can take account of the variety of evidence and context presented by these types of cases.[9] We make no attempt to solve the problem here in the abstract; we simply add another example of an emotional injury, the relevant testimony, and the corresponding award. This may be all that can be done to advance the clarity of this particular corner of federal damages lawSSoffer another anecdote to the slow accretion of reported case law on emotional damages in the hope that future decisions will have more on which to draw.

Our opinion in *Vadie* offers a useful comparison, for the testimony of Salinas and his wife stands in instructive contrast to that of the plaintiff in *Vadie*, in which plaintiff sued for discriminatory discharge and retaliation under title VII. *Vadie*, 218 F.3d at 367. The discrimination claim was reversed on appeal,

---

[7](...continued) correct any potential unfairness to the plaintiff from this reading of precedent.

[8] The government tries to avoid the impact of this detailed testimony of emotional harm by linking it to an incident earlier in Salinas's career in which he witnessed the death of a fellow customs agent and his family in a work-related traffic accident. The jury, by awarding emotional damages in the amount of $1 million (which we deem to be $300,000, *see supra* note 3), obviously believed Salinas's injury was traceable to the actions of the government and not to the accident. Where a jury chooses to believe two equally plausible stories, our review is foreclosed. *Wilson v. Monarch Paper Co.*, 939 F.2d 1138, 1146 (5th Cir. 1991).

[9] *See, e.g.*, *Price v. City of Charlotte, N.C.*, 93 F.3d 1241 (4th Cir. 1996) (reviewing cases and concluding awards may be proper when supported by testimony of specific harm that is capable of articulation, even if sole testimony is that of the plaintiff).

leaving only the retaliation theory to support an emotional damages award of $300,000. *Id.* at 376. The whole of plaintiff's testimony was in response to a single question from counsel and was uncorroborated.[10] The panel concluded that this testimony could support an award of only $10,000. *Id.* at 378.

Salinas offered a much more detailed description of the emotional harm he had suffered, noting the effect it had on his job and on his relationship with his wife and son. He mentioned particular manifestations of his emotional harm in health problems leading to numerous visits to a physician. He described in detail the specifics of his paranoiaSSthat it caused him to buy an alarm for his house and reduced him to a constant state of fear, always looking over his shoulder and not even allowing his wife to get the mail by herself.

All of this was corroborated by his wife. The testimony of medical problems was confirmed by a $16,000 award of medical expenses. In sum, Salinas has offered far more than did the *Vadie* plaintiff to substantiate his emotional injury.

Nevertheless, Salinas has not presented enough evidence to support an award of $300,000; a comparison with other emotional damage awards in this circuit stemming from discrimination points to $100,000 as the proper award. In keeping with our duty to avoid substituting our opinion for that of the jury, we multiply this amount by 150%. *Giles*, 245 F.3d at 489. Anything more would be "clearly excessive." *Eiland*, 58 F.3d at 183.

We stress that this amount is neither the minimum nor the maximum for emotional damage claims in discrimination claims. Nor is this amount a floor or ceiling for such claims supported by the testimony of a plaintiff and spouse. All this figure represents is the last dollar amount Salinas can be awarded based on the evidence he presented for the damages he has suffered before that amount would be excessive as a matter of law. We remit the compensatory damage portion of Salinas's award to $150,000 unless he elects a new trial on damages. *Id.*

VACATED and REMANDED.

Judge DeMOSS concurs in the judgment only.

---

[10] In full, the question and answer were:

Q. All right. Dr. Vadie, let me ask you this: When you did not get this job as a professor in the Chemical Engineering DepartmentSSyou were saying you love Mississippi State UniversitySShow did it affect you or how did it make you feel so far as your worrying and anxiety over that was concerned? Describe that for the jury.

A. . . . It destroyed me. It totally ruined me, and I become sick, totally ill, physically, mentally, and everything. I took many doctors, many pills.

I did not know what to do, where to go, what to say. I did not know whether it was nighttime or daytime. I could not sleep for months at a time. Headache, nausea. Still I am under severe doctor surveillance because of what they have done to me . . . .

*Vadie*, 218 F.3d at 377.