**Cindy IDOM, Plaintiff**

v.

**NATCHEZ–ADAMS SCHOOL DISTRICT, et al., Defendants**

**CIVIL ACTION NO: 5:14–cv–38(DCB)(MTP)**

United States District Court, S.D. Mississippi, Western Division.

Signed April 6, 2016

William C. Ivison, Ken R. Adcock, Adcock & Morrison, PLLC, Ridgeland, MS, for Plaintiff.

J. Tucker Mitchell, Stephen D. Stamboulieh, Mitchell Day Law Firm, PLLC, Ridgeland, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

David Bramlette, UNITED STATES DISTRICT JUDGE

This cause is before the Court on the defendants Natchez–Adams School District, Frederick Hill and Tanisha W. Smith's Motion for Judgment as a Matter of Law, or in the alternative Motion for a New Trial, or in the alternative Motion for Remittitur pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure (**docket entry 115**). Having carefully considered the motion and the plaintiff's response, as well as the parties' memoranda and the applicable law, and being fully

advised in the premises the Court finds as follows:

The defendants' motion alleges the following grounds for relief:

(1) Defendants are entitled to Judgment as a Matter of Law because the jury verdict finding that plaintiff was constructively discharged is against the overwhelming weight of the evidence (Motion, ¶ 4);

(2) The jury verdict finding that race was a factor in plaintiff's alleged constructive discharge is against the overwhelming weight of the evidence (Motion, ¶ 5);

(3) In the alternative, defendants are entitled to a new trial because of plaintiff's late disclosure of her purported attempts at mitigation of damages (Motion, ¶ 8);

(4) On several occasions, the Court observed three jurors sleeping which highly prejudiced defendants' right to a fair trial (Motion, ¶ 10);

(5) Although Jury Instruction 12 required the jury to consider whether malice was an integral part of plaintiff's intentional infliction of emotional distress claims, the verdict form omitted that requirement, leading the jury to believe that malice was not an integral component of that claim (Motion, ¶ 11);

(6) The award of compensatory damages of $100,000 against the District was based upon speculation, conjecture, and guesswork and there was a lack of competent evidence to demonstrate that plaintiff suffered emotional pain, mental anguish or any related tangible injury to support an award of $100,000 (Motion, ¶ 12);

(7) The back pay awarded by the jury is against the overwhelming weight of the evidence submitted during trial that plaintiff retired voluntarily. Additionally, an award of back pay disregards Mississippi law on employment contracts that an individual with a term of employment is not guaranteed an expectation of future employment (Motion, ¶ 13);

(8) There is insufficient evidence to sustain a verdict against Hill and Smith for intentional infliction of emotional distress (Motion, ¶ 14);

(9) The compensatory damages are subject to remittitur (Motion, ¶ 15).

This Title VII employment race discrimination and state law action, tried before a jury on September 14 to 18, 2015, centered around claims of racial discriminatory conduct, hostile work environment, and harassment during the 2012/2013 school year against defendants Hill and Smith (both African–American), on behalf of and pursuant to a discriminatory policy by their employer, Natchez–Adams School District ("the District"), which the plaintiff Cindy Idom (Caucasian) alleged ultimately resulted in her being terminated/constructively discharged from her Principal position on July 5, 2013.

The jury rendered its verdict and found in favor of Idom against the defendants on the following causes of action: (1) Breach of Employment Contract; (2) Race Discrimination under Title VII and § 1981 (for both intentional race discrimination and racially hostile work environment); (3) Equal Protection violation under § 1983; and (4) Intentional Infliction of Emotional Distress. The jury awarded Idom a total of $371,737 in monetary damages. *See* Jury Interrogatories and Verdict Form (docket entry 94).

Both before and during trial, multiple jury instruction conferences were held with the Court and the parties. As a result, the jury was provided with unopposed jury instructions (including the verdict form) that the parties and their counsel had agreed upon as being appropriate. Defendants did not object to any jury instructions (including the Jury Interrogatories and Verdict Form).

Several of these unopposed jury instructions adequately and sufficiently instructed the jury about the elements and required proof for Idom's causes of action as well as for the defendants' defenses. For example, Jury Instruction No. 12 set out the required elements and proof for Intentional Infliction of Emotional Distress ("IIED"), and provided instruction as to the requisite "malice" component of the claim. Several of the agreed-upon jury instructions also properly instructed the jury on the required proof and proper method of calculating an award for damages. For example, Jury Instruction No. 14 provided instructions for Title VII/§ 1983 damages for back pay and compensatory damages (including mental anguish and emotional distress); Jury Instruction No. 15 provided instructions for mitigation of damages; and Jury Instructions No. 16 and 17 provided instructions for proof/calculation of mental anguish and emotional distress damages with regard to Title VII/§ 1983 compensatory damages (No. 16) and IIED (No. 17).

**Motion for Judgment as a Matter of Law**

Under Rule 50, a trial court should not render judgment as a matter of law " 'unless, considering the evidence in the light most favorable to [the plaintiff], the facts and inferences point so overwhelmingly to [the defendants] that reasonable jurors could not have arrived at a verdict except in [their] favor.' " *Streber v. Hunter*, 221 F.3d 701, 721 (5th Cir.2000)(quoting *Douglas v. DynMcDermott Petroleum Operations Co.*, 144 F.3d 364, 369 (5th Cir.1998)). In making this decision, the court reviews the record as a whole and "must draw all reasonable inferences in favor of the nonmoving party[.]" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (citations omitted). Conversely, the trial court "may not make credibility determinations or weigh the evidence" and "must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 150–51, 120 S.Ct. 2097 (citations omitted).

**Motion for a New Trial**

"A new trial will not be granted based on trial error unless, after considering the record as a whole, the court concludes that manifest injustice will result from letting the verdict stand." *Foradori v. Harris*, 523 F.3d 477, 506 (5th Cir.2008). "Courts do not grant new trials unless it is reasonably clear that prejudicial error has crept into the record or that substantial justice has not been done, and the burden of showing harmful error rests on the party seeking the new trial." *Jones v. Ruiz*, 478 Fed.Appx. 834, 835–36 (5th Cir.2012)(internal quotation marks and citation omitted). "[T]he court cannot be put in error when a party fails to timely raise an objection." *Reddin v. Robinson Prop. Grp., L.P.*, 1999 WL 33537172, at *3 (N.D.Miss. July 21, 1999) *aff'd sub nom. Reddin v. Robinson Prop. Grp. Ltd. P'ship*, 239 F.3d 756 (5th Cir.2001).

**Motion for Remittitur**

"There is a strong presumption in favor of affirming a jury award of damages." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 488 (5th Cir.2001) (citation omitted). Likewise, "[t]he size of an award is within the province of the jury[.]" *Schexnayder v. Bonfiglio*, 167 Fed.Appx. 364, 367 (5th Cir.2006). "The damage award may be overturned only upon a clear showing of excessiveness[.]" *Giles*, 245 F.3d at 488 (citation omitted).

A verdict will be found to be excessive by a trial court as a matter of law if shown to exceed any rational appraisal or estimate of damages that could be based upon the evidence before the jury. A jury's award should not be disturbed

unless it is entirely disproportionate to the injury sustained. While the sky cannot be the limit, pain and suffering and non-economic considerations are, to a large degree, not susceptible to monetary quantification, and the jury thus necessarily has especially broad leeway." *Whitehead ex rel. Whitehead v. K Mart Corp.*, 173 F.Supp.2d 553, 562 (S.D.Miss.2000)(internal quotations and citations omitted). Remittitur should be denied "where the jury's verdict was clearly within the universe of possible awards supported by the evidence." *Id.* at 563 (quotations and citation omitted).

■ To determine if remittitur is appropriate, this Court employs "the Fifth Circuit's 'maximum recovery rule,' which prescribes that the verdict will be reduced, if necessary, to the maximum amount the jury could properly have awarded" for similar injuries in the relevant jurisdiction. *Id.* at 558. "Pursuant to this 'maximum recovery' rule, if the Court does remit an award, it then usually adds another 50% 'multiplier, or percentage enhancement' to ensure it is not substituting its judgment for the jury's." *Brown v. Mississippi Dep't of Health*, 2012 WL 5381352, at *4 (S.D.Miss. Oct. 31, 2012) *aff'd*, 550 Fed.Appx. 228 (5th Cir.2013)(citing *Thomas v. Tex. Dept. of Criminal Justice*, 297 F.3d 361, 369 (5th Cir.2002)).

## MOTION FOR JUDGMENT AS A MATTER OF LAW

### I. The Plaintiff's Constructive Discharge Claim

■ The defendants contend that they are entitled to Judgment as a Matter of Law because the jury verdict finding that plaintiff was constructively discharged is against the overwhelming weight of the evidence. However, considering the evidence in the light most favorable to the plaintiff, a reasonable jury could have arrived at the conclusion that Idom was constructively discharged and subject to a racially hostile work environment. "To prove constructive discharge, a party must show that a reasonable party in his shoes would have felt compelled to resign.... To determine if a reasonable employee would feel compelled to resign, courts consider the relevancy of the following events: ... badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation[.]" *Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 444 (5th Cir.2011)(internal citations and quotations omitted).

Idom testified that she was continuously harassed throughout the subject school year by defendants on account of her race, that she felt compelled and forced to resign by defendants Hill and Smith, and that she had the impression they wanted to get rid of her. She testified that defendant Hill told her, on July 5, 2013, that she would not be a Principal for the upcoming school year, and that her only option for continued employment was a demotion to a teacher position. Testimony of witnesses and evidence at trial revealed that Idom's employment relationship with the District was in a state of acrimony, and that Idom was continuously exposed to an abusive and hostile work environment. Whether Idom availed herself of certain grievance procedures was never raised or asserted by the defendants as a defense to constructive discharge before or during the trial, thereby waiving the defense.

In any event, this has no relevance to determining a constructive discharge claim under Title VII. Whether Idom received a hearing or availed herself of the grievance procedures relates to Idom's claim for Due Process violations under § 1983, which this Court dismissed at the summary judgment phase. A reasonable jury could easily conclude from the substantial evidence submitted at trial that a reasonable employee

in Idom's position would have felt compelled to resign or retire, and that she was subject to a racially hostile work environment. The defendants are not entitled to judgment as a matter of law on the constructive discharge claim.

## II. The Plaintiff's Race Discrimination Claim

■ The defendants also contend that they are entitled to Judgment as a Matter of Law because the jury verdict finding that race was a factor in plaintiff's alleged constructive discharge is against the overwhelming weight of the evidence. However, considering the evidence in the light most favorable to Idom, a reasonable jury could have found by a preponderance of the evidence that Idom was qualified for her Principal position and suffered an adverse employment action on account of her race (by being constructively discharged and/or terminated). Idom had always received excellent evaluations and held an unblemished employment record during her ten years as Principal at West Elementary. Contrary to defendants' claim, the plaintiff was not rendered unqualified due to the prediction of a failing rating for her school at the July 5, 2013, individual meeting. Testimony at trial showed that this prediction of a failing rating (Trial Exhibit "P–19") was neither reliable nor indicative of Idom's work performance, and that it was not reasonable to expect Idom to produce a passing grade at West Elementary given the hostile work environment, the fact that West was in its first year of testing, and the fact that West had several problems associated with its re-organization (such as having a majority of new students at higher grade levels, inadequate space, and new teachers). The evidence at trial demonstrated that all similarly-situated African American administrators (Principals and Assistant Principals) in "failing" schools were not terminated or demoted or treated in the same manner as Idom, and in fact kept their jobs or in some instances were even promoted. In fact, Idom's replacement as Principal of Frazier Elementary was a less qualified African–American Assistant Principal from a "failing" school.

The defendants' argument is based on certain evidence that the jury is not required to believe, and therefore the Court must disregard it for present purposes. It is within the province of the jury to assess both the defendants' and the plaintiff's evidence and testimony on disputed issues such as the purpose and results of the July 5, 2013, meeting, and the reasons for Idom's retirement and her discharge. Whether Idom was qualified and whether she was constructively discharged/terminated for a pretextual reason are disputed issues of fact, and the jury was presented relevant evidence in favor of Idom, sufficient to allow the jury to render a verdict for the plaintiff.

The defendants ask the Court to assess the credibility of the evidence, but doing so is improper when deciding whether a judgment as a matter of law should be granted. If the defendants thought the evidence on these issues failed as a matter of law, they should have objected to jury instructions on these issues, and their failure to object constitutes a waiver of the right to object post-trial. In any event, the jury could reasonably conclude from the substantial evidence presented that Idom was constructively discharged/terminated on account of her race for a pretextual reason; therefore, the defendants are not entitled to a judgment as a matter of law.

## MOTION FOR A NEW TRIAL

## I. The Plaintiff's Supplemental Disclosure of Testimony on Mitigation of Damages

■ Pursuant to the Court's Case Management Order, trial for this case

was originally set for the August 3–21, 2015 trial term. Following a pretrial conference on July 16, 2015, the defendants advised the Court that a potential settlement was imminent and the original jury instruction conference set for July 28, 2015 was therefore canceled. However, the parties failed to reach a settlement and, as a result, the jury instruction conference was reset for August 4, 2015, and trial was reset for August 10, 2015. On August 4, 2015, after the jury instruction conference, Idom's counsel advised defense counsel of supplemental disclosures regarding Idom's mitigation of damages as a result of the plaintiff having misunderstood the meaning of mitigation. On August 5, 2015, defendants filed a Motion in Limine "to exclude evidence of Plaintiff's alleged attempts to mitigate her damages" (docket entry 81). Later that day, the Court held a telephone conference with the parties to discuss the Motion in Limine. During the conference, "[t]he Court determined with the advice of the parties that the best course of action was to continue the case to allow the parties time to conduct limited discovery" to avoid prejudice to either party, and as a result the Motion in Limine was denied. (Order Denying Motion in Limine and Motion to Continue—docket entry 84). The Court also continued the trial to begin August 24, 2015 (without objection from the parties) to allow the limited additional discovery (also without objection from the parties). *Id.* As a result, on August 13, 2015, Idom's second deposition was conducted (at the expense of Idom's counsel) regarding her disclosure of mitigation of damages. The Court subsequently continued the trial again to September 14, 2015, to accommodate the parties and the Court (docket entry 86).

 The Court has broad and considerable discretion in discovery-related matters. *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 569 (5th Cir.1996). To determine whether to exclude untimely disclosed testimony, the Court considers the following factors: "(1) the explanation for the failure ...; (2) the importance of the testimony; (3) potential prejudice in allowing the testimony; and (4) the availability of a continuance to cure such prejudice." *Hamburger v. State Farm Mut. Auto. Ins. Co.*, 361 F.3d 875, 883 (5th Cir.2004). The Fifth Circuit has "repeatedly emphasized that a continuance is the preferred means of dealing with a party's attempt to designate [witness testimony] out of time." *Betzel v. State Farm Lloyds*, 480 F.3d 704, 708 (5th Cir.2007) (citation and internal quotation omitted).

The Court considered the *Hamburger* factors and concluded, based on the advice of the parties, that any potential prejudice to the defendants could be cured by continuing trial and allowing further discovery. The parties conducted Idom's second deposition on August 13, 2015, a month before trial began on September 14, 2015, giving the defendants adequate time to conduct supplemental limited discovery on mitigation of damages and to prepare their defenses for trial.

 Furthermore, it is the defendants, not Idom, who have the burden to prove that Idom did not mitigate her damages. *Sellers v. Delgado Coll.*, 902 F.2d 1189, 1193 (5th Cir.1990). "To meet this burden, an employer may demonstrate that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it." *Id.* "[T]he determination of whether or not a Title VII claimant uses reasonable diligence in obtaining substantially comparable employment is a determination of fact" for the jury. *Id.* Contrary to defendants' claim, the subject disclosure of mitigation of damages did not shift the burden of proof from Idom

to the defendants. Pursuant to *Sellers*, the burden was never on Idom to begin with, but was always on the defendants to prove that Idom did not exercise reasonable diligence to obtain substantially equivalent work that was available. Idom's testimony on mitigation was that she tried to obtain similar employment in the Baton Rouge, Louisiana area, where she and her husband moved after her termination, but was unable to find similar employment despite her best efforts. The Court provided correct, unopposed jury instructions for the defendants' mitigation of damages defense, and the jury obviously found that Idom satisfied her duty to mitigate as evidenced by the verdict. *See* Jury Instruction No. 15. The Court prevented prejudice to either side by granting a continuance and allowing the defendants to conduct full discovery. Because the defendants have failed to show "manifest injustice" from Idom's disclosure of mitigation of damages, a new trial shall not be granted on these grounds.

## II. "Sleeping" Jurors

 The defendants allege that, on several occasions, the Court observed three jurors sleeping which highly prejudiced the defendants' right to a fair trial (Motion, ¶ 10). "If sleep by a juror makes it impossible for that juror to perform his or her duties or would otherwise deny the defendant a fair trial, the sleeping juror should be removed from the jury." *U.S. v. Freitag*, 230 F.3d 1019, 1023 (7th Cir.2000). However, "[e]very incident of juror misconduct does not require a new trial." *U.S. v. Springfield*, 829 F.2d 860, 864 (9th Cir.1987).

In this instance, the Court noticed at the beginning of trial that two jurors' eyes appeared to be closed. The Court mentioned this to the parties and also to a security officer who responded to the Court that one juror's eyes appeared to be closed, but that the other juror was merely looking down making notes on a notepad which was in his lap. The Court instructed the security officer to remind the jurors in open court that they must remain attentive at all times, and this was done. From that point forward, the Court closely monitored the jury, and observed that all jurors were alert and attentive for the remainder of the trial which lasted a total of five days.

The defendants have failed to demonstrate that they were prejudiced by any inattention on the part of one or more jurors. Moreover, they did not raise any objection at trial as to any "sleeping" jurors, or the Court's treatment of the issue, the instant Motion being the first time the defendants have raised the issue. Because the defendants failed to raise a timely objection at trial, and waited until after the conclusion of the evidence and entry of verdict, their objection is waived.

## III. Lack of the Word "Malice" in IIED Portion of Jury Verdict Form

 The defendants claim that the absence of the word "malice" in the section of Jury Verdict Form dealing with the plaintiff's intentional infliction of emotional distress claim led the jury to believe that malice was not an integral component of that claim (Motion, ¶ 11). However, the defendants failed to object at trial to any jury instructions or the Jury Interrogatories and Verdict Form, electing to do so only after the jury returned its adverse verdict. Failing to timely object to a jury instruction "until after the verdict had been returned and the jury had been discharged" waives the right to object to any alleged error with the instruction. *Peveto v. Sears, Roebuck & Co.*, 807 F.2d 486, 489 (5th Cir.1987).

Rule 51 of the Federal Rules of Civil Procedure provides: "No party may as-

sign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." .... Furthermore, if the trial court's instruction is correct as a matter of applicable state law, the party who failed to object at trial cannot avail himself of the plain error rule. *Id.* (footnote omitted). As a result, the defendants have waived any objection to this alleged error.

In addition, the subject Jury Interrogatories and Verdict Form are clearly adequate, without plain error, and provide no basis for a new trial. Reviewing the adequacy of Jury Interrogatories and Verdict Forms "requires [the court] to look beyond the face of the interrogatories to the court's instructions." *In re Whitaker Const. Co., Inc.*, 178 Fed.Appx. 412, 414 (5th Cir.2006)(citing *McVey v. Phillips Petroleum Co.*, 288 F.2d 53, 59 (5th Cir. 1961)). Jury Instruction 12, approved by the defendants, correctly instructs the jury as to the malice element for Idom's IIED claim, as follows:

The Court instructs the jury that Plaintiff, Cindy Idom has brought a claim for intentional infliction of emotional distress against Defendants, Frederick Hill and Tanisha W. Smith. Plaintiff's claim is predicated on malicious conduct by Hill and Smith.

"Malice" is defined as the intentional doing of a harmful act without justification or excuse.

If you find from a preponderance of the evidence that:

1. Defendants, Frederick Hill and Tanisha W. Smith acted willfully or wantonly towards Cindy Idom by harassing and degrading her in her employment, creating a hostile and abusive work environment, intentionally discriminating against her, and terminating and/or con-

structively discharging her from her employment;

2. That the actions of Defendants, Frederick Hill and Tanisha W. Smith were acts which evoke outrage or revulsion in civilized society;

3. That the acts were done by Defendants, Frederick Hill and Tanisha W. Smith with malice and directed at or intended to cause harm to Cindy Idom;

4. Cindy Idom suffered severe emotional distress as a direct result of these acts of the Defendants, Frederick Hill and Tanisha W. Smith; and

5. Such resulting emotional distress was foreseeable as resulting from the intentional acts of the Defendants, Frederick Hill and Tanisha W. Smith;

then your verdict shall be for Plaintiff. ...

However, if you believe that Plaintiff, Cindy Idom has failed to prove any one of these elements by a preponderance of the evidence in this case, then your verdict shall be for Defendants, Frederick Hill and Tanisha W. Smith on the claim of intentional infliction of emotional distress.

Jury Instruction No. 12.

The jury instructions clearly required a finding of malice before the jury could find for Idom on her IIED claim. Nevertheless, the defendants argue that because the word "malice" does not appear on the face of the Jury Verdict Form, "the jury could not have found that Defendants Hill and Smith acted with malice which is a necessary element of an intentional infliction of emotional distress claim." Defendants' Memorandum, p. 12.

The Court, in reviewing whether the jury was misled by an instruction, reads all the instructions in their entirety. *Sanjuan v. IBP, Inc.*, 160 F.3d 1291 (10th Cir.1998)(citing *United States v. Grey*, 56

F.3d 1219, 1222 (10th Cir.1995)(to determine whether the jury was properly instructed, we examine whether the jury instructions, *as a whole*, "adequately stated the governing law and provided the jury with an accurate understanding of the issues and standards available.")(emphasis added)).

Because the jury instructions as a whole correctly stated the law, and because the defendants' failure to object constitutes waiver, the defendants are not entitled to a new trial on this basis.

## IV. Sufficiency of Evidence of Plaintiff's IIED Claims Against Defendants Hill and Smith

 The defendants claim that there is insufficient evidence to sustain the verdict against Hill and Smith for intentional infliction of emotional distress (Motion, ¶ 14). If a party makes "no motion for a directed verdict, nor any objection to the giving or the failure to give an instruction" at trial, the party waives its objection to claim that a jury verdict was contrary to law or evidence. *Boudreaux v. Mississippi Shipping Co.*, 222 F.2d 954, 954 (5th Cir.1955). In the instant case, the plaintiff asserts that the defendants failed to move for a directed verdict at trial as to Idom's IIED claims, and failed to object to Jury Instruction No. 12 (instructing the jurors on the IIED claims) as being unwarranted by the evidence. They cannot now claim that Idom's IIED claims are unsupported by the evidence after the jury verdict has been rendered. The defendants have waived their objection for the IIED verdict being contrary to evidence, and therefore are not entitled to a new trial.

Even if the defendants had preserved their objection at trial, the evidence was sufficient to support the jury's verdict for IIED against defendants Hill and Smith, and it was within the discretion of the jury to settle this disputed issue. The following standard applies:

> The court must affirm the verdict unless the evidence—viewed in the light most favorable to the jury's verdict—points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion. Moreover, in reviewing a jury award, a district court must affirm unless there is a complete absence of evidence to support the verdict.

*Stephenson v. State Farm Mut. Auto. Ins.*, 2010 WL 3724305, at *2 (N.D.Miss. Sept. 16, 2010)(internal citations and quotations omitted). Here, there was sufficient evidence presented at trial for the jury to find for Idom on her IIED claims. The testimony and evidence showed that Idom was the victim of continual and abusive harassment, belittlement, intimidation, discriminatory misconduct and a racially hostile working environment, which was perpetrated by defendants Hill and Smith. Both Hill and Smith repeatedly (and unjustly) reprimanded and criticized Idom, and repeatedly sent central-office personnel for unannounced visits which were a pretext for disrupting Idom's office and school. Idom testified that defendant Smith accused her of being unprofessional and unqualified, and was always rude, intimidating, and belittling to Idom. The jury was entitled to believe that these acts were committed with "malice" considering that they were done without justification or excuse, other than discriminatory intent, which other (African–American) Principals in the District did not receive. Furthermore, In order for the defendants to contend that there was insufficient proof at trial of IIED, they were required to object to the jury instruction and verdict form on this basis. The defendants' failure to object constitutes a waiver of their right to object for the first time herein, or at the

very least strongly supports that Idom's IIED claims were properly submitted to the jury to consider the evidence. Thus, the defendants are not entitled to a new trial on this basis.

## V. Back Pay Award

■ As with the IIED claim, the defendants failed to move for a directed verdict at trial as to plaintiff's back pay award; nor did the defendants object to jury instructions on the issue of back pay (Jury Instruction No. 14) as being contrary to evidence or a misstatement of the law. Because defendants did not object to this alleged error at trial, but are asserting it for the first time in the instant Motion, they have waived their objection that the jury verdict for back pay was contrary to evidence or law, and therefore are not entitled to a new trial.

Even if the defendants did preserve this objection, it still does not provide defendants a basis for a new trial. Once Idom establishes that unlawful discrimination caused her loss, she is entitled to back pay. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 417–18, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975)(holding that back pay should be denied only in unusual circumstances where the award would frustrate the statutory purpose of eradicating discrimination and making victims whole). In this case, the jury awarded $171,737 against the District for back pay (lost wages and benefits from July 5, 2013 until the date of the verdict, inclusive of the amount awarded for one-year breach of contract)[1], for Title VII race discrimina-

tion, and for § 1983 Equal Protection rights violation. Idom set forth sufficient evidence that she was a victim of the defendants' unlawful discrimination and was thereby terminated and/or constructively discharged from her employment as Principal, which caused her to suffer lost wages and benefits, entitling her to back pay. The amount awarded ($171,737) was comprised of two years of lost salary and benefits (the time from the discriminatory discharge until the date of the verdict), and was supported by the expert testimony and calculations of Idom's economist, Dr. Gerald Lee (Trial Exhibit "P42"). Back pay was awarded as a result of racial discrimination in order to make Idom whole, and is therefore legally proper. There was no question that Idom was a year-to-year contract employee, and there was no guarantee that she would get additional years of employment. However, this fact alone does not legally bar the jury from awarding damages for back pay under the plaintiff's Title VII and § 1983 Equal Protection claims. Instead, whether Idom had an "expectation in continued employment" determines if there is a property interest that serves as the basis for due process violation claims, as opposed to determining the legal sufficiency for back pay awards.[2] There is "no authority suggesting that a Title VII plaintiff is precluded from proving the possibility of additional one-year contracts but for the discriminatory termination of employment." *Jackson–Hall v. Moss Point Sch. Dist.,* 2012 WL 1098524, at *6 (S.D.Miss. Apr. 2, 2012)(denying a motion in limine

1. " 'Back pay' commonly refers to the wages and other benefits that an employee would have earned if the unlawful event that affected the employee's job related compensation had not occurred." *Rutherford v. Harris County,* 197 F.3d 173, 191 (5th Cir.1999). Back pay is calculated from the time of the adverse employment action until the date of judgment. *Id.*

2. For example, the case that defendants rely upon, *Papagolos v. Lafayette Cty. Sch. Dist.,* 972 F.Supp.2d 912 (N.D.Miss.2013), holds that "[a] unilateral expectation of continued employment does not create a constitutionally protected property interest" for due process violation claims. *Id.* at 929.

attempting to limit the plaintiff-educator's front and back pay award to her one-year contract of employment).

Idom had worked as a teacher or Principal in public schools for approximately 40 years, 14 of those in the District. She had been a distinguished and qualified Principal at West Elementary since 2002, had received many accolades and awards for her past work, had an excellent employment record and received excellent evaluations. Idom testified that she was willing and able to continue working in the District, and that she intended to retire at age 65.

If the defendants contended that a back pay award was not sufficiently supported or was contrary to law, it was necessary for them to object to the jury instructions and verdict form regarding back pay. The defendants' failure to object waives their right to protest for the first time in the present Motion. The issue of back pay was legally permissible and properly submitted to the jury. Accordingly, the subject back pay award is both legally proper and supported by the evidence, and defendants are not entitled to a new trial on the issue of back pay.

## MOTION FOR REMITTITUR

█ In this case, the jury awarded $100,000 in compensatory damages (including mental anguish and emotional distress injuries) against the District for both Title VII race discrimination (finding both intentional race discrimination and a racially hostile work environment), and § 1983 Equal Protection rights violation. The award is clearly against only one Defendant (the District) for Idom's separate federal causes of action (Title VII and § 1983), and is not duplicative of the awards against the two individual defendants for Idom's state law IIED claims. In fact, the jury awarded $0.00 in compensatory damages against Hill (individually) for § 1983 Equal Protection rights violation. Conversely, the jury awarded $75,000 against Hill (individually) and $25,000 against Smith (individually) for IIED. The defendants failed to object at trial that the compensatory damages award under Title VII and § 1983 were duplicative, and failed to object to the Court's instructions and verdict form on these issues with compensatory damages, thereby waiving their right to object for the first time in the present Motion.

█ Under Title VII, there is a $300,000 statutory cap on the amount of compensatory damages that may be awarded. *See* 42 U.S.C. § 1981a(b)(3)($300,000 cap for employers with 501 or more employees). In this case, the jury awarded $100,000 in compensatory damages against the District for both Title VII race discrimination and § 1983 Equal Protection rights violation, which is one-third of the statutory cap. In reviewing emotional distress damages, the courts

> review with deference damage awards based on intangible harm, because the harm is subjective and evaluating it depends considerably on the demeanor of witnesses. Nonetheless, to merit any award greater than nominal damages, emotional distress damages must be supported by competent evidence concerning the injury. In certain cases a plaintiff's testimony alone may be sufficient proof of mental damages.

*Tureaud v. Grambling State Univ.*, 294 Fed.Appx. 909, 916 (5th Cir.2008)(internal citations and quotations omitted)(citing *Giles*, 245 F.3d at 487–88). "Damages for emotional distress may be appropriate ... where 'the plaintiff suffers sleeplessness, anxiety, stress, marital problems, and humiliation.'" *Giles*, 245 F.3d at 488 (quoting *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir.1998)); *see also DeCorte v. Jordan*, 497 F.3d 433, 442 (5th

Cir.2007)(emotional harm may also manifest itself as depression, emotional distress, loss of self esteem, fatigue, nervous breakdown, hair loss or headaches).

In this case, the plaintiff provided detailed testimony as to the nature and extent of her mental anguish and emotional distress. Idom testified that she was the victim of continual and severe harassment, belittlement, degradation, wrongful accusations, uneven and unfounded criticism and berating language, and other discriminatory conduct which occurred on account of her race during the defendants' multiple unannounced visits, unfair reprimands, and other meetings.

Idom testified that under the defendants' administration, unlike prior administrations, she was offered no help, guidance, support or resources by the defendants, and that there was an atmosphere of intimidation, distrust and disdain toward her. Idom's testimony, which was obviously believed by the jury, established that she was subject to a racially hostile work environment. Idom also testified that as a result thereof, she suffered stress, anxiety, worry, loss of self worth, sleeplessness (for which she visited a doctor and was prescribed sleeping medication), and had problems controlling her high blood pressure.

Idom was compelled to leave her home community of Natchez, Mississippi, and moved to Baton Rouge, Louisiana, in order to escape her embarrassment, humiliation and sense of a lowered standing in the community caused by the defendants' discriminatory discharge and forced retirement, and as a means of coping with her mental anguish. Idom further testified that there was a nonexistent job market for similar employment, and that despite her best efforts, she could not find such employment. She testified that her emotional injuries persisted during the subject school year up through the time of trial.

Finally, Idom's distraught demeanor during her relevant trial testimony displayed a high level of emotional distress.

Idom's testimony was corroborated by several other witnesses (both African–American and Caucasian), including Alyson Bequette (former Morgantown Principal) and Linda Grafton (former Fallin Director), who testified that Idom called them during the subject school year sobbing and in a state of despair because of defendants Hill and Smith's harassment. Grafton also testified that Idom frequently told her that "they are trying to fire me" in reference to defendants Hill and Smith. Cleveland Moore (former Principal at Natchez High School) testified that Hill held an apparent disdain toward Idom, and exhibited harassment and intimidation toward her.

Bettye Bell (former School Improvement Coordinator) testified that Hill wanted Idom gone on account of her race and wanted to "nail her to the cross," that Hill belittled and embarrassed Idom in front of her peers, and that Hill forced Bell to frequently visit Idom's school unannounced to find problems. Bell also stated that Idom was distraught and crying after she was transferred from West Elementary.

Idom's former co-workers also testified as to her difficulties and struggles with finding similar employment. In addition, Idom introduced medical records showing that she had visited her doctor for sleeplessness and was prescribed, and continues to take, sleeping medication. (Trial Exhibits P–47 and P–48).

The jury's compensatory damages award of $100,000 clearly falls within the range of awards for compensatory damages/mental anguish for similar injuries in other Title VII cases in the Fifth Circuit. For example, in *Tureaud v. Grambling State Univ., supra,* the Fifth Circuit affirmed a $140,000 jury award of emotional

distress damages based solely on the plaintiff's own uncorroborated testimony. 294 Fed.Appx. at 916. The plaintiff in that case testified that he suffered a "painful experience" from his discharge, and experienced emotional embarrassment, weight gain, and stress. *Id.* Idom similarly testified about her symptoms and manifestations of emotional distress, but also presented more proof than the plaintiff in *Tureaud,* including corroborating testimony by other witnesses and medical records.

In *Salinas v. O'Neill,* 286 F.3d 827 (5th Cir.2002), the plaintiff testified in detail concerning symptoms he suffered, similar to Idom's, including loss of self-esteem, feelings of not being a competent employee, loss of sleep, stress, paranoia, fear of future retaliation, and high blood pressure. *Id.* at 829–30. Salinas's testimony was corroborated by his wife's testimony and by medical bills. *Id.* at 832–33. The Fifth Circuit remitted the $300,000 award for emotional distress to $150,000, after multiplying $100,000 by 150% pursuant to the "maximum recovery rule." *Id.* at 833.

Juries in federal district courts in Mississippi have awarded substantial compensatory damages/emotional distress awards in Title VII employment discrimination cases based upon similar injuries, sometimes with less proof than in Idom's case, and the district courts have declined to remit these awards to an amount less than the subject $100,000 compensatory damage jury award.

In *Brown v. Mississippi Dep't of Health,* 2012 WL 5381352 (Oct. 31, 2012), a $350,000 jury award for compensatory damages was remitted to $210,000 per the "maximum recovery" rule (150% of the $140,000 award affirmed in *Tureaud, supra).* The jury award in *Brown* was based solely on the plaintiff's testimony that he was disheartened, hurt and experienced sleeplessness, and the jury's observation of the plaintiff's humiliated and frustrated demeanor. *Brown,* 2012 WL 5381352, at **4–5.

In *Hardy v. City of Tupelo, Miss.,* 2009 WL 3678262 (N.D.Miss. Nov. 2, 2009), the court refused to remit the jury's award of $200,000 for emotional distress, finding that it was not clearly excessive due to the plaintiff's testimony of depression, humiliation, stress and fear—which were corroborated by his wife and a psychologist.

In *Minter–Smith v. Mukasey,* 2008 WL 2164565 (May 22, 2008), the plaintiff's $300,000 emotional distress award was remitted to $150,000 (the plaintiff testified that she suffered symptoms similar to Idom's, including fatigue, stress, anxiety, sleeplessness and humiliation, and like Idom she saw her family doctor for the stress and was prescribed medication. *Minter–Smith,* 2008 WL 2164565, at **9, 11).

Idom's case is also distinguishable from the cases relied upon by the defendants. In *Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803 (5th Cir.1996), the Fifth Circuit reviewed the district court's refusal to render a j.n.o.v. on a $7,500 mental anguish jury award. *Id.* at 804, 809. Likewise, in *Oden v. Oktibbeha Cty., Miss.,* 246 F.3d 458 (5th Cir.2001), the appellate court reviewed the defendant's motion for judgment as a matter of law as to a $20,000 jury award for compensatory damages. *Id.* at 470–71. Unlike Idom's case, the Fifth Circuit in both of these cases was not asked to determine whether a remittitur was appropriate or the maximum amount that could be awarded, and instead ruled that the testimony by the plaintiff and her co-worker (in *Farpella–Crosby),* and the uncorroborated testimony by the plaintiff (in *Oden),* were by themselves sufficient to support the respective jury awards. Moreover, there was no indication that the plaintiffs in *Farpella–Crosby*

or *Oden* ever consulted a physician or introduced medical records.

The evidence at Idom's trial sufficiently supports and is proportionate to the amount of compensatory damages awarded for mental anguish and emotional distress. This Court gives deference to the considerable leeway the jury has in reaching its award, and adheres to the "strong presumption" of affirming the jury award. The defendants have not made a "clear showing" that the $100,000 award would exceed any rational estimate of damages that could be awarded, given Idom's detailed testimony of emotional harm and manifestations which were corroborated by other witnesses and medical records.

Under the Fifth Circuit's "maximum recovery rule," the maximum amount the jury could properly have awarded would be in the area of $100,000 to $150,000, thus the $100,000 awarded (even without adding the 150% multiplier) is the legally correct amount. The Court shall therefore deny the defendants' motion for a remittitur, and deny the defendants' Motion in its entirety.

Accordingly,

IT IS HEREBY ORDERED that the defendants Natchez–Adams School District, Frederick Hill and Tanisha W. Smith's Motion for Judgment as a Matter of Law, or in the alternative Motion for a New Trial, or in the alternative Motion for Remittitur pursuant to Rules 50 and 59 of the Federal Rules of Civil Procedure (**docket entry 115**) is DENIED.

SO ORDERED, this the 6th day of April, 2016.